**Jack FOGARTY, Plaintiff,**

v.

**Joseph M. BOLES, Defendant.**

**Civil Action No. 95–1990.**

United States District Court,
E.D. Pennsylvania.

Aug. 30, 1996.

Michael Brodie, Brodie, Rubinsky & Agre, Philadelphia, PA, Robert W. Kosman, Brodie, Techner, Rubinsky & Ford, Philadelphia, PA, for plaintiff.

Thomas J. Profy, III, James A. Downey, III, Begley, Carlin & Mandio, Langhorne, PA, for defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff Jack Fogarty is a public school teacher at Harry S. Truman High School in Levittown, Pennsylvania. Defendant is Joseph M. Boles, the principal of Harry S. Truman High. Plaintiff alleges that defendant violated his First Amendment rights when he removed him from three compensated extracurricular positions in retaliation for what defendant believed was plaintiff's association with a newspaper reporter. Defendant has moved for summary judgment as-

serting that plaintiff has not proffered legally sufficient evidence to support his claim. For the reasons set forth herein, defendant's motion will be granted.

## I. BACKGROUND [1]

Plaintiff Jack Fogarty has been employed as an English teacher by the Bristol Township School District, a public school district, for nearly 30 years. (Pl.'s Br. Contra Def.'s Mot. Summ.J., doc. no. 18 at 2–3) From the late 1970s to the present, plaintiff has been assigned to Harry S. Truman High School. (*Id.* at 3)

Beginning in the early to mid 1980s, in addition to his duties as a teacher, plaintiff served as chairperson of Harry S. Truman's English department, business manager for the annual school play and advisor for the school's yearbook. (*Id.* at 2–4) Plaintiff received compensation over and above his teacher's salary for the work he performed in these extracurricular positions. (*Id.* at 2)

According to plaintiff, in the months immediately prior and subsequent to December 1993, representatives of the Bucks County Department of Health inspected the high school and uncovered a series of code violations. (*Id.* at 5–6) Plaintiff contends that the violations were with respect to noxious environmental conditions caused by substantial tarring work on the high school's roof. (*Id.* at 6) Plaintiff states that a Department of Health report issued regarding an inspection conducted on December 3, 1993, referred to the fact that " 'several concerned parents' had complained as to 'dust, tar vapors, unsafe conditions, students with sore throats, asthma, [and] rashes,' " resulting from the roofing work. (*Id.*) According to plaintiff, a notable amount of media interest had developed concerning health issues stemming from the roof construction at Harry S. Truman High. (*Id.*)

Plaintiff avers that just before noon on December 9, 1993, he was summoned to de-fendant's office over the school's public address system. (*Id.* at 7) Plaintiff contends that when he arrived at defendant's office, defendant was "obviously upset." (*Id.*) According to plaintiff, "in a very 'gruff tone' " defendant asked him why he had called the Bucks County Courier Times, a newspaper widely distributed in Lower Bucks County. (*Id.*) Plaintiff alleges that he denied contacting the newspaper, but defendant stated that he had, indeed, telephoned the paper because defendant had just received a call from a Courier Times reporter, J.D. Mullaney, who said he was returning plaintiff's call. (*Id.*) Defendant then informed plaintiff that Mullaney was on his way to the school. (*Id.*) Plaintiff states that, on his suggestion, he and defendant waited together for Mullaney to arrive. (*Id.*)

According to plaintiff, when Mullaney arrived at the school he greeted defendant with a friendly " 'Hello Joe,' " and was introduced to plaintiff by defendant. (*Id.* at 8) Plaintiff contends that he immediately denied ever meeting Mullaney and told the reporter that he did not know who he was. (*Id.*) Plaintiff avers that Mullaney, who was accompanied by a photographer, stated that he had received a written phone message that he was to call plaintiff at the high school. (*Id.*) Plaintiff states that in defendant's presence, he told Mullaney that he did not contact him and stated that he had enough to worry about without having to contend with explaining to his principal that he did not call a reporter. (*Id.*) The meeting then concluded. (*Id.*) Later that same day, plaintiff states that he wrote a letter to defendant in which he again denied contacting Mullaney. (*Id.* at 6, 10)

Subsequent to the Mullaney incident, plaintiff contends, defendant's attitude towards him changed drastically. (*Id.* at 23) Plaintiff argues that, in stark contrast to his pre-December 9, 1993, treatment of plaintiff, defendant was consistently " 'very quick and

---

**1.** This version of the facts is taken from plaintiff's amended complaint and plaintiff's memorandum in opposition to defendants' motion for summary judgment along with the exhibits attached thereto, and is viewed in the light most favorable to plaintiff. *See infra* Section II. While for pur-poses of this motion the facts asserted by plaintiff in the above referenced documents are deemed true, the recitation of facts in this section of the Court's opinion does not constitute findings of fact by the Court.

very gruff'" in his regular dealings with plaintiff after December 9, 1993. (*Id.*)

Plaintiff avers that sometime around February 1994, defendant removed him from his position as business manager of the school play. (*Id.* at 3–4) Shortly after the close of the 1993–1994 school year, plaintiff states, defendant advised him that he was also removing him from his position as yearbook advisor and replacing him as chairman of the English department. (*Id.* at 4) Plaintiff contends that defendant removed him from these positions, which he had held for many years, without warning or adequate explanation and despite his prior history of exemplary performance. (*Id.* at 5)

In April 1995, plaintiff filed the present action, pursuant to 42 U.S.C. Sec. 1983, alleging that defendant's actions violated his First Amendment rights. (*See* Compl., doc. no. 1; Am.Compl., doc. no. 6)

## II. STANDARD OF REVIEW

To prevail on a motion for summary judgment, a moving party must establish that no genuine issues of material fact remain in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). An issue is "genuine" only if "there is evidence from which a reasonable trier of fact could find in favor of the non-moving party, viewing the record as a whole in light of the evidentiary burden the law places on that party." *United States v. Premises Known as 717 S. Woodward St., Allentown, Pa.,* 2 F.3d 529, 533 (3d Cir.1993) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252–56, 106 S.Ct. 2505, 2512–14, 91 L.Ed.2d 202 (1986)). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d 202.

When ruling on a motion for summary judgment, the deciding court must view the evidence in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Mellon Bank Corp. v. First Union Real Estate Equity & Mortgage Inv.,* 951 F.2d 1399, 1404 (3d Cir.1991). The court must accept the nonmovant's allegations as true, and resolve conflicts in the nonmovant's favor. *Big Apple BMW, Inc. v. BMW of North Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). The moving party bears the burden of " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If the movant makes a showing that there is no genuine issue of material fact, the nonmoving party may not rest on its pleadings. In these circumstances, the non-moving party must go beyond the pleadings to "establish the existence of each element on which it bears the burden of proof." *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991).

## III. DISCUSSION

In his amended complaint, plaintiff alleges that defendant impermissibly retaliated against him because he mistakenly believed "that plaintiff had been communicating with a news reporter . . . with respect to matters of public importance concerning Harry S. Truman High School." (Am.Compl., doc. no. 6 at ¶ 11) Plaintiff argues that defendant's actions violated his First Amendment Rights. He seeks damages under 42 U.S.C. § 1983.[2]

A public employee's claim of retaliation for engaging in protected activity is examined under a three-step analysis:

---

**2.** Section 1983 (civil action for deprivation of rights) provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

*First,* the plaintiff must show that the activity in question was protected. To deserve protection, "the speech must be on a matter of public concern, and the employee's interest in expression on this matter must not be outweighed by any injury the speech could cause to the interest of the state as an employer in promoting the efficiency of the public services it performs through its employees." *Second,* the plaintiff must show that the protected activity was a substantial or motivating factor in the alleged retaliatory action. *Finally,* the employer can establish that it would have taken the adverse employment action regardless of whether the employee had engaged in protected conduct.

*Pro v. Donatucci,* 81 F.3d 1283, 1288 (3d Cir.1996) (citing *Watters v. City of Philadelphia,* 55 F.3d 886, 892 (3d Cir.1995) (other citations omitted)) (emphasis added). Before reaching the "threshold issue" of whether plaintiff's speech was on a matter of "public concern," *see Watters,* 55 F.3d at 892 (citation omitted), in this case the Court must first determine if plaintiff can make a First Amendment argument, given that plaintiff himself claims that he neither said nor intended to say anything.

### A. *Protected Activity*

Without citation to authority, defendant argues that because plaintiff denies that he ever contacted or otherwise communicated with Mr. Mullaney, there is no speech at issue in this case and, therefore, that defendant is entitled to summary judgment on plaintiff's First Amendment claim. (*See* Def.'s Mem. Re Mot. For Summ. J., doc. no. 15, at 3, 7, 12) The Court disagrees.

■ "'[I]t is essential that public employees be able to speak out freely on questions of public concern without fear of retaliatory dismissal.'" *Pro,* 81 F.3d at 1287 (quoting *Watters,* 55 F.3d at 891). The government "'cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression.'" *Id.* (quoting *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983)). While the First Amendment "does not shield a governmental employee from the possibility that his employment might be terminated—however mistaken or *unreasonable* that decision might be—" if the adverse employment action is "*motivated* by the desire or intention to curtail or retaliate for employee activity which the Constitution protects," then a First Amendment violation has occurred. *Neubauer v. City of McAllen, Tex.,* 766 F.2d 1567, 1578–79 (5th Cir.1985) (emphasis in original). The issue, therefore, is not whether the adverse employment action "can somehow be objectively justified, but whether it was in fact *improperly motivated.*" *Id.* at 1579 (emphasis in original) (citation omitted). It is "the actual motive of the governmental employer which is crucial in first amendment discharge cases, not the accuracy of the employer's factual determination." *Id.* at 1580.

■ Following the teachings discussed above, the Court concludes that here, plaintiff's contention that defendant was mistaken in his belief that plaintiff had contacted or otherwise communicated with Mr. Mullaney does not bar plaintiff's First Amendment claim. If the adverse employment actions taken against plaintiff by defendant were "in fact *improperly motivated*" by defendant's, albeit erroneous, belief that plaintiff was attempting to speak on a matter of public concern, then defendant violated plaintiff's First Amendment rights.[3]

---

3. Courts deciding cases in the labor and environmental regulatory contexts have recognized that adverse employment actions based upon the erroneous belief that activity protected under statute has occurred constitute retaliatory action under the statutes at issue. *See, e.g., Brock v. Richardson,* 812 F.2d 121, 123–25 (3d Cir.1987) (FLSA prohibition against retaliatory discharge not rendered inapplicable if employer's belief that employee engaged in activities protected under the Act proves incorrect); *Henning & Cheadle v. National Labor Relations Board,* 522 F.2d 1050, 1052 (7th Cir.1975) (NLRA violated if employer acts against employees in belief that they have engaged in protected activities, whether or not they actually did so); *Reich v. Hoy Shoe Co., Inc.,* 32 F.3d 361, 368 (8th Cir.1994) (OSHA's anti-retaliation provision protects employees from adverse employment actions motivated by suspicion or belief that the employees have engaged in protected activity). Defendant makes no argument and the Court finds no reason why similar protection should not be afforded employees in the First Amendment context where

**B.** *Public Concern*

 Whether speech touches on a matter of public concern is a legal question to be determined by the court, not the finder of fact. *See Connick v. Myers,* 461 U.S. at 148 n. 7, 103 S.Ct. at 1690 n. 7; *Pro,* 81 F.3d at 1288. " 'An employee's speech addresses a matter of public concern when it can be "fairly considered as relating to any matter of political, social, or other concern to the community." ' " *Pro,* 81 F.3d at 1288 (quoting *Holder v. City of Allentown,* 987 F.2d 188, 195 (3d Cir.1993) (quoting *Connick,* 461 U.S. at 146, 103 S.Ct. at 1690)). In such cases, the employee's speech is protected. However,

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Id.* (quoting *Connick,* 461 U.S. at 147, 103 S.Ct. at 1690). The public concern inquiry must be determined by reference to the " 'content, form, and context of a given statement, as revealed by the whole record.' " *Id.* (quoting *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690). The Third Circuit discussed this analysis in *Holder:*

> The content of the speech may help to characterize it as relating to a matter of social or political concern of the community if, for example, the speaker seeks to 'bring to light actual or potential wrongdoing or breach of public trust' on the part of government officials. The form and context of the speech may help to characterize it as relating to a matter of social or political concern to the community if, for example, the forum where the speech activity takes place is not confined merely to the public office where the speaker is employed.

*Id.* (quoting *Holder,* 987 F.2d at 195 (citations omitted)). If the court concludes that the speech concerns private rather than public matters, it need not proceed to a consideration of the employer's interests. *Id.* (citing *Connick,* 461 U.S. at 146, 103 S.Ct. at 1689–90).

 The Court finds that in the present case, the alleged speech embodied matters of public concern. On their face, statements about ongoing environmental and health problems at a public high school appear to raise issues which can be "fairly considered as relating to [a] matter of political, social, or other concern to the community." *Id.* (citations and internal quotations omitted); *see Bloch v. Temple Univ.,* 1996 WL 451372 at *6 (E.D.Pa. Aug. 7, 1996) (statements regarding the improper storage of toxic and unidentified materials within a public university laboratory raise issues of public concern) (Robreno, J.). Defendant does not argue otherwise.

Reviewing the record as a whole and in the light most favorable to plaintiff, the Court finds that if defendant retaliated against plaintiff, as plaintiff alleges, because he believed plaintiff was attempting to speak to the press about "environmental and health problems" at the high school, then the speech at issue was on a matter of public concern.

**C.** *Balancing of Interests*

 As the Court has concluded that the speech in question raised issues of public concern, the Court must now balance plaintiff's interest in expression on this matter with the interest of the state as an employer in promoting the efficiency of the public services it performs through its employees. *See Watters,* 55 F.3d at 895. The state "bears the burden to justify a discharge, and that burden 'varies depending upon the nature of the employee's expression.' " *Id.* (quoting *Connick,* 461 U.S. at 150, 103 S.Ct. at 1691) (other citation omitted).

In the present case, defendant has identified no interests of the state as an employer adversely affected by the speech at issue. Defendant having failed to satisfy his burden, the Court concludes, therefore, that the speech at issue was speech protected by the First Amendment.

what is at stake is not a statutory, but a constitutional right.

### D. Substantial or Motivating Factor

 Having satisfied the public concern prong of the three step analysis discussed in *Pro*, plaintiff must now "show that the protected activity was a substantial or motivating factor in the alleged retaliatory action." *Pro*, 81 F.3d at 1288. To establish a causal link between the protected speech and his removal from the three extracurricular positions, "plaintiff must proffer evidence sufficient to raise the inference that the protected activity was likely the reason for the adverse action." *Azzaro v. County of Allegheny*, 1996 WL 426792 at *7 (3d Cir. July 31, 1996) (citation and internal quotation marks omitted).[4] To satisfy his burden, plaintiff need not produce direct evidence of a causal connection—circumstantial evidence will suffice. *See Id.* at *7–*8. The causation inquiry is a factual one. *See Pro*, 81 F.3d at 1288. Upon review of the proof proffered by plaintiff, the Court finds that plaintiff has presented insufficient evidence that defendant's actions were prompted by the improper motive which plaintiff alleges.

Plaintiff contends that defendant retaliated against him because defendant mistakenly believed that plaintiff contacted a news reporter to discuss matters of public concern. (Am.Compl., doc. no. 6 at Par. 11, 12) Viewed in its most favorable light, plaintiff proffers the following evidence to support his position: (1) defendant's alleged "gruff tone" on December 9, 1993—the date of the Mullaney incident; (2) defendant's progressively adverse treatment of plaintiff after December 9, 1993; and (3) plaintiff's long history of exemplary service in the three positions from which he was summarily dismissed, at least in two instances, allegedly for cause.[5] At best, what this evidence shows is that defendant retaliated against plaintiff because defendant believed plaintiff had contacted a newspaper. However, whether or not defendant's actions were motivated by his belief that plaintiff was attempting to communicate with the media is not the dispositive issue in this case. In order to withstand defendant's summary judgment motion, plaintiff must also come forward with sufficient evidence that defendant believed that plaintiff's intent in contacting a newspaper reporter was to speak on a matter of public concern.

An employer's decision to take an adverse employment action against an employee simply because the employer believed that the employee was attempting to communicate with the media, without more, does not violate the First Amendment. The First Amendment does not protect a public employee's right to talk to the press; rather, it protects the public employee's right to speak on matters of public concern.[6] *See Pro*, 81 F.3d at 1288 (to deserve protection, the speech must be on a matter of public concern).

Plaintiff argues that because the Mullaney encounter "occurred at a time when media attention had been focused on the High School because of various environmental and health problems ongoing in the building at that time," defendant must have believed that the reason plaintiff contacted the reporter was to speak on a matter of public concern. (Pl.'s Br. Contra Def.'s Mot. Summ. J.,

---

4. Although in *Azzaro*, the Third Circuit discussed causation specifically in terms of a plaintiff's Title VII claims, the Court indicated that the same causation analysis applies to a plaintiff's claims for retaliatory discharge in violation of the First Amendment and Section 1983. *See Azzaro*, 1996 WL 426792 at *15.

5. The Court notes that plaintiff makes no argument that he had a property interest in any of the three extracurricular positions from which he was dismissed by defendant. Plaintiff also does not contest defendant's averment that it is within his absolute discretion as principal to replace a person filling an extracurricular position on an annual basis. (*See* Def.'s Mem. Re Mot. For Summ. J., doc. no. 15, at 4)

6. For example, in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), one of the seminal cases in this area, the Supreme Court held that a teacher's First Amendment rights were violated when he was dismissed in retaliation for a letter he wrote and published in a local newspaper that was critical of the way the Board of Education and district superintendent of schools had handled past proposals to raise revenue for the schools. The Court found for the teacher not because his letter was published in a newspaper, but because his letter addressed "issues of public importance" in which "free and open debate is vital to informed decision-making." *See Id.* at 571–75, 88 S.Ct. at 1736–38.

doc. no. 18 at 1–2, 5–6) Plaintiff's argument is sheer speculation.

The only evidence plaintiff proffers of defendant's beliefs as to the reason for plaintiff's alleged call to the local paper does not advance his case. Plaintiff alleges that when he arrived at defendant's office on December 9, 1993, defendant "asked [him] why he had called the Courier Times." (Pl.'s Br. Contra Def.'s Mot. Summ. J., doc. no. 18 at 7) This evidence seems to indicate that, as of that moment, defendant did not know the reason for plaintiff's alleged call.

Plaintiff having failed to "proffer evidence sufficient to raise the inference that the protected activity [i.e., communicating with a news reporter *regarding a matter of public concern*] was likely the reason for the adverse action[s]" defendant took against him, defendant's motion for summary judgment will be granted. *See Azzaro*, 1996 WL 426792 at *7.

## IV. CONCLUSION

As no genuine issues of material fact remain with regard to plaintiff's claims, defendant's motion for summary judgment will be granted and the case will be dismissed.