Jack **FOGARTY**, Appellant,

v.

Joseph M. **BOLES**, Appellee.

No. 96–1828.

United States Court of Appeals, Third Circuit.

Argued May 20, 1997.

Decided Aug. 4, 1997.

Michael L. Brodie (argued), Robert W. Kosman, Brodie & Rubinsky, Philadelphia, PA, for Appellant.

James A. Downey, III (argued), Begley, Carlin & Mandio, Langhorne, PA, for Appellee.

Before: GREENBERG, ROTH, and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this claim under the First Amendment, a public school teacher asserts that he was punished because of the principal's belief that he had called the press about a matter of public interest at the school. We conclude that plaintiff fails to meet his burden of proving a violation of his free speech rights when he denies contacting, attempting to contact, or having any intention of contacting the press. Because of the absence of protected speech, we will affirm the grant of summary judgment in favor of the principal.

Faithful to our obligation to view the facts in the light most favorable to the non-moving party, we present the following version of the events from the plaintiff's perspective. Plaintiff, Jack Fogarty, is an English teacher at Truman High School in Bristol Township, Pennsylvania. In addition to his teaching duties, for a number of years plaintiff had assumed various paid extracurricular positions, including Chairman of the English Department, Business Manager for the school play, and Faculty Advisor for the yearbook. Plaintiff received these assignments on a yearly basis from the school principal, defendant Joseph M. Boles.

Defendant became the principal at Truman in June 1990. Over the next three and one-half years, defendant and plaintiff enjoyed a relationship largely without incident, with defendant re-appointing plaintiff to each of his extracurricular positions in the successive school years. That changed in early 1994, however, when defendant did not renew the plaintiff's appointments for the 1994–95 school year.

Plaintiff asserts that an incident occurred on December 9, 1993 that precipitated his removal. On that day, a furious defendant directed plaintiff to report to the principal's office. When he did so, defendant accused plaintiff of contacting a reporter for a local newspaper. The reporter, who at that time was en route to the school, had previously written unfavorable stories about dust and fumes from a construction project at the school, which had caused minor illnesses among the students and teachers.

When the reporter arrived, plaintiff denied that he had called him or was even acquainted with him. The reporter replied that he had received a written message from someone at the newspaper office to call plaintiff, but was unable to identify the caller. Later

that day, defendant received a letter from plaintiff summarizing the episode and reiterating that he had not contacted the reporter.

In February 1994, defendant eliminated the plaintiff's job as Business Manager of the school play. In June of that year, defendant removed plaintiff as Yearbook Advisor and declined to renew his appointment as Chairman of the English Department for the following school year. Defendant asserted various reasons for his actions unrelated to the December 9th incident involving the reporter. Plaintiff does not dispute that defendant had the discretion as principal to replace a person filling an extracurricular position on an annual basis. The complaint in the district court alleged that the removal from extracurricular positions was a retaliatory action by defendant pursuant to his belief that plaintiff had exercised his First Amendment rights. However, in a deposition plaintiff stated that he had not called the reporter, had never talked to him, and had never felt pressure from defendant or anyone else to avoid talking with the media:

"*Question:* So as you stated in December of '93, and I'll ask you again this afternoon, you did not call the Courier Times?

*Answer:* That is correct.

\*     \*     \*     \*     \*     \*

*Question:* Have you at any time, by Mr. Boles or any administrator, been prevented from or prohibited from speaking to any person in the media, be it the print media or the television media or radio media?

*Answer:* No.

\*     \*     \*     \*     \*     \*

*Question:* Have [your fellow teachers] ... in the last five years, since '91, ever made you, either by word, gesture, inference, feel that you would be jeopardizing your person or position by speaking to the press?

*Answer:* No."

In ruling on the defendant's motion for summary judgment, the district court said that it "must first determine if plaintiff can make a First Amendment argument, given that plaintiff himself claims that he neither said nor intended to say anything." *Fogarty v. Boles,* 938 F.Supp. 292, 297 (E.D.Pa.1996). Despite the defendant's insistence that no speech had occurred, the district court concluded that "[i]f the adverse employment actions taken against plaintiff by defendant were 'in fact improperly motivated' by defendant's, albeit erroneous, belief that plaintiff was attempting to speak on a matter of public concern, then defendant violated plaintiff's First Amendment rights." *Id.* at 297.

The Court then found that the "alleged speech embodied matters of public concern," *id.* at 298, but that plaintiff had presented insufficient evidence that "defendant believed that plaintiff's intent in contacting a newspaper reporter was to speak on a matter of public concern." *Id.* at 299. "The First Amendment does not protect a public employee's right to talk to the press; rather, it protects the public employee's right to speak on matters of public concern." *Id.* Accordingly, the district court entered summary judgment in favor of defendant.

Plaintiff raises a number of issues on appeal asserting, among other points, that the district court should have presumed that any attempted communication with the reporter was on a matter of public concern. He also contends that it was improper to grant summary judgment because of his failure to establish "whether the 'non-speech' was of 'public' or 'private' concern."

■ In some cases, the First Amendment protects public employees from retaliation by their employer. Under 42 U.S.C. § 1983, public employees may sue to enforce that protection if (1) they spoke on a matter of public concern; (2) their interest in that field outweighs the government's concern with the effective and efficient fulfillment of its responsibilities to the public; (3) the speech caused the retaliation; and (4) the adverse employment decision would not have occurred but for the speech. *Green v. Philadelphia Housing Auth.,* 105 F.3d 882, 885 (3d Cir.1997). This test is based on a series of cases in which the Supreme Court struck a balance between the employee's right to speak and the government-employer's duty to serve the public productively. *Rankin v.*

*McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Pickering v. Board of Educ. of Twp. High Sch. Dist. 205, Will County*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *see also Board of County Comm'rs v. Umbehr*, —— U.S. ——, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996).

In *Connick*, the Court pointed out that in the absence of protected speech, a public employee may be discharged even if the action is unfair, or the reasons "are alleged to be mistaken or unreasonable." 461 U.S. at 146, 103 S.Ct. at 1689. "[G]overnment officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Id.*

That "wide latitude," however, is not limitless. In *Rankin*, the county constable discharged an employee who, after learning of the attempted assassination of President Reagan, callously remarked, "[I]f they go for him again, I hope they get him." 483 U.S. at 379–80, 107 S.Ct. at 2893–94. The Court held that the comment was a political statement on a matter of public concern and could not be used as a basis for termination because it did not interfere with the orderly administration of the public office. *Id.* at 388–92, 107 S.Ct. at 2899–901.

We have discussed the First Amendment free speech rights of public employees in a variety of factual scenarios. *See, e.g., Azzaro v. County of Allegheny*, 110 F.3d 968, 978–81 (3d Cir.1997) (en banc) (complaints of sexual harassment by county official); *Watters v. City of Philadelphia*, 55 F.3d 886, 893–94 (3d Cir.1995) (manager's statements to media about lack of formal policies for assistance program available to police department employees); *Rode v. Dellarciprete*, 845 F.2d 1195, 1201–02 (3d Cir.1988) (state police employee's statements to media about retaliation she suffered as a consequence of her

brother-in-law's court testimony against the state police); *Czurlanis v. Albanese*, 721 F.2d 98, 104 (3d Cir.1983) (speeches by county mechanic at county board meetings criticizing practices of division of motor vehicles).

The employer's motive was an issue in *Waters v. Churchill*, 511 U.S. 661, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994), where the employer received two versions of speech that led to an employee's discharge. One account contained protected and non-disruptive terminology, but the other did not. The Supreme Court determined that if, after a reasonable investigation, the employer in good faith believed the unprotected account, then there would be no liability for the discharge even if, in fact, the protected version had been the one that actually was uttered. *Id.* at 682, 114 S.Ct. at 1891 (Souter, J., concurring). Motive was critical in *Waters* because proof of good intentions exonerated the public employer.

In each of the cited cases, objectively manifested speech was present—the issue frequently was whether it was protected. The employer's motivation became a factor when the decision to punish depended on a choice between versions of speech that were protected and those that were not.

In *Pro v. Donatucci*, 81 F.3d 1283 (3d Cir.1996), we held that appearance in court in obedience to a subpoena was a form of speech protected by the First Amendment even though the plaintiff-witness presented no testimony. Our research has uncovered only one case in which a plaintiff asserted an improper motive on the part of the employer, but did not allege that speech had occurred. In *Barkoo v. Melby*, 901 F.2d 613 (7th Cir. 1990), a public employee alleged that her employer retaliated against her because she had instigated a series of articles in a local newspaper. Plaintiff insisted that she had not provided any information to the press.

The *Barkoo* Court rejected the plaintiff's section 1983 claim of retaliation based on her employer's belief that she had engaged in protected speech. The Court explained that the plaintiff "provide[d] no authority for the proposition that her free speech rights are deprived in violation of § 1983 when the

speech at issue admittedly never occurred." *Id.* at 619.

Notably, in *Mt. Healthy,* the Supreme Court made it clear that "the burden was properly placed upon [plaintiff] to show that his conduct was constitutionally protected, and that his conduct was a 'substantial factor' or to put it in other words, that it was a 'motivating factor' in the Board's decision not to rehire him." 429 U.S. at 287, 97 S.Ct. at 575 (footnote omitted). It is obvious that plaintiff in the case before us cannot sustain that burden of proof because there was no conduct that was constitutionally protected—indeed, there was no conduct—period.

Plaintiff, in effect, contends that if conduct had occurred, then it would have been about a matter of public concern. In the procedural posture of this case, inferences from undisputed facts are to be resolved in favor of the party opposing the motion for summary judgment, but that rule does not require us to indulge in sheer speculation, especially when plaintiff insists he never intended to say anything.

We find ourselves in agreement with the *Barkoo* Court that, in the absence of speech, or, at the extreme, intended speech, there has been no constitutional violation cognizable under section 1983 based on an asserted "bad motive" on the part of defendant. In the sports or athletic vernacular, this is a jurisprudential version of "no harm, no foul," or, as Judge Roth phrased it in *Pro:* "a free speech claim depends on speech, and there was none in this case." 81 F.3d at 1292 (Roth, J., dissenting).

To fill the gap in his proof, plaintiff cites cases in the regulatory field assessing liability against employers for retaliatory discharges based on erroneous beliefs about an employee's conduct. *See, e.g., NLRB v. Link-Belt Co.,* 311 U.S. 584, 588, 61 S.Ct. 358, 361, 85 L.Ed. 368 (1941); *Brock v. Richardson,* 812 F.2d 121, 123–25 (3d Cir.1987); *see also Reich v. Hoy Shoe Co.,* 32 F.3d 361, 368 (8th Cir.1994); *Henning & Cheadle, Inc. v. NLRB,* 522 F.2d 1050, 1052 (7th Cir.1975). This contention would have some strength had not a similar argument been rejected in *Waters.*

Justice O'Connor's plurality opinion noted generally that "we have often held various laws to require only an inquiry into the decisionmaker's intent ... but ... this has not been our view of the First Amendment." *Waters,* 511 U.S. at 677, 114 S.Ct. at 1888. More specifically, the employee in *Waters* asked the Court to rely on *NLRB v. Burnup & Sims, Inc.,* 379 U.S. 21, 85 S.Ct. 171, 13 L.Ed.2d 1 (1964), where an employer was held liable for retaliatory discharge. In that case, two employees engaged in union activity were terminated based on the employer's mistaken, but good-faith, belief that the employees intended to use violence.

The employee in *Waters* argued for a similar approach in the Court's First Amendment jurisprudence. In rejecting that contention, Justice O'Connor made it clear that statutory rights and constitutional rights in the employment context are not coextensive: "We have never held that it is a violation of the Constitution for a government employer to discharge an employee based on substantively incorrect information." 511 U.S. at 679, 114 S.Ct. at 1889 Citing *Burnup & Sims,* the opinion explained that "[i]n some situations, the employee may ... have a federal statutory claim. Likewise, the State or Federal Governments may, if they choose, provide similar protection to people fired because of their speech. But this protection is not mandated by the Constitution." *Id.; see also id.* at 674, 114 S.Ct. at 1887 ("the government may certainly choose to give additional protections to its employees beyond what is mandated by the First Amendment, out of respect for the values underlying the First Amendment, values central to our social order as well as our legal system. See, e.g., Whistleblower Protection Act of 1989....").

Thus, the fact that private employees have additional statutory protection for their speech in some situations does not require application of those precedents in the First Amendment context as well. It must be remembered that the First Amendment applies only to public employers, and there is no doubt that government has a greater right to limit the speech of its employees than it does a private citizen. *See Waters,* 511 U.S.

at 671–72, 114 S.Ct. at 1886–87; *Connick,* 461 U.S. at 147, 103 S.Ct. at 1689; *Azzaro,* 110 F.3d at 975.

■ As we pointed out in *Brock,* there are provisions in both the National Labor Relations Act and the Fair Labor Standards Act prohibiting retaliatory discharges for participation in activity permitted by that legislation. 812 F.2d at 123–25. Because those statutes are aimed at eliminating an atmosphere of intimidation, the discharge of employees under the mistaken impression that they had participated in protected statutory activity is enough to violate the Acts. *Id.* at 125. As *Waters* remarked, however, such specific prohibitions do not govern First Amendment claims under section 1983. 511 U.S. at 679, 114 S.Ct. at 1889.

The plaintiff's reliance on *Neubauer v. City of McAllen,* 766 F.2d 1567 (5th Cir.1985) for the principle that improper motive on the part of the employer is enough to state a claim is misplaced. A reading of that opinion establishes that there had been speech in that case. *See id.* at 1569. The issue in *Neubauer* was similar to that in *Waters*— whether the employer's reliance on one of the versions of speech was justified. It was only in that context that motive became relevant. *Id.* at 1579–80.

We conclude that the absence of speech— in fact, its explicit disclaimer by plaintiff—is fatal to the plaintiff's claim. On that basis, we will affirm the judgment of the district court.