

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-19-2006

# Matsey v. Westmoreland

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4189

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Matsey v. Westmoreland" (2006). *2006 Decisions.* Paper 1084.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1084

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-4189

STEPHEN M. MATSEY,

Appellant

v.

WESTMORELAND COUNTY; THOMAS CERASO, Individually, and in his capacity
as Chairman of the Westmoreland County Prison Board; TOM BALYA, COUNTY
COMMISSIONER, Individually, and in his capacity as a member of the Westmoreland
County Prison Board; P. SCOTT CONNER, Individually, and in his capacity as a
member of the Westmoreland County Prison Board; JOHN PECK, Individually, and in
his capacity as a member of the Westmoreland County Prison Board; JEFFREY
PAVETTI, Individually, and in his capacity as a member of the Westmoreland County
Prison Board; WILLIAM WHIRLOW, Individually, and in his capacity as former
Deputy Warden of Westmoreland County Prison; CHARLES (CHUCK) DOMINICK,
Individually, and in his capacity as Westmoreland County Director of Human Resources

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 01-cv-01802)
District Judge: The Honorable Maurice B. Cohill, Jr.

Argued April 27, 2006

Before: AMBRO and FUENTES, Circuit Judges,
and IRENAS,* District Judge

* Honorable Joseph E. Irenas, Senior United States District Judge for the District of
New Jersey, sitting by designation.

Edward A. Olds, Esq. (Argued)
1007 Mount Royal Boulevard
Pittsburgh, PA 15223

   Counsel for Appellant

Robert E. Durrant, Esq. (Argued)
Neva L. Stanger, Esq.
Campbell, Durrant & Beatty, P.C.
555 Grant Street, Suite 310
Pittsburgh, PA 15219

   Counsel for Appellees

---

OPINION

---

IRENAS, Senior United States District Judge

   Appellant Stephen M. Matsey appeals from the September 29, 2004,

Opinion and Order of the Western District of Pennsylvania granting the motion for

summary judgment of the Appellees Westmoreland County, Thomas Ceraso, Tom Balya,

P. Scott Conner, John Peck, Jeffrey Pavetti, William Whirlow, and Charles (Chuck)

Dominick on Matsey's Section 1983 claims alleging violations of the First Amendment,

the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to

the United States Constitution, and his claim alleging a violation of the Pennsylvania

Whistle Blower Act ("PWBA"), 43 Pa.C.S.A. § 1421 *et seq.*[1] Matsey's claims stem from his suspension and eventual termination from his job as a lieutenant corrections officer at the Westmoreland County Prison. We will deny his appeal.

I.

Matsey began working for the Westmoreland County Prison ("Prison") in 1982 as a part-time corrections officer. At the time of the events relevant to this lawsuit, Matsey served as a lieutenant on the night shift. As the night shift lieutenant, Matsey was the highest ranking official at the Prison during his shift. He was fired from his job in April, 2001.[2]

Matsey's termination stems from a series of troubling incidents at the Prison, in which his personal involvement is subject to some dispute. An undercover investigation by the Pennsylvania State Police revealed in June, 2000, that an inmate at the Prison, Ronald Whethers, was running a drug trafficking operation out of his prison cell, using a cell phone and aided by employees of the Prison.

A grand jury was convened to investigate the drug scandal, and the Pennsylvania Department of Corrections conducted its own investigation of the Prison. The investigative reports revealed security and other serious problems at the Prison, including allegations that Whethers received certain favorable treatment from corrections

---

[1]Matsey voluntarily withdrew his claim alleging "political discrimination" and all claims against Defendant "Gary" (Michael) Millward.

[2]Matsey's counsel admitted during oral argument that Matsey was an at-will employee.

officers and Prison personnel.  Matsey was not, nor has he ever been, implicated in the Whethers drug trafficking operation.

The Prison warden, Kurt Scalzott, assigned Whirlow[3] to investigate the allegations of favorable treatment.  Whirlow's investigation concluded that Whethers and the other inmates in his unit received a special meal on the night of June 18, 2000, despite the fact that they had not performed any extra work, whereas the inmates of other units did not receive any food.  In addition, Whirlow found that hot food had been given to the night court staff, and that a sergeant under Matsey's supervision had entered the Prison's kitchen to prepare food during the night shift, both in violation of Prison policy.  Whirlow also uncovered that Matsey allegedly engaged in an eighteen minute private conversation with Whethers during a day shift in April, 2000.  Whirlow recommended that immediate action be taken against Matsey and the sergeant.

Upon review of Whirlow's investigation, Scalzott recommended that the Westmoreland County Prison Board ("Prison Board") suspend Matsey for three days for violating Prison policy by feeding the night court staff and permitting the sergeant to cook in the kitchen. Scalzott did not recommend any discipline based on Matsey's conversation with Whethers or the meal provided to the inmates on June 18, 2000,

---

[3]The working relationship of Matsey and Whirlow was undisputedly very poor. Matsey openly criticized Whirlow's job performance and integrity.  Additionally, at some point prior to the Whethers drug scandal, Matsey attempted to discipline Whirlow's wife and sister-in-law, both of whom worked at the Prison. The women filed a harassment charge against Matsey.  Whirlow gathered information on the harassment charge, and sent Matsey a letter indicating that he had used poor judgment in handling the situation.

because Prison policy permitted providing a meal to inmates who worked during the night shift.

The Prison Board decided to suspend Matsey without pay for sixty days in January, 2001. While Matsey was suspended, his attorney complained to a reporter about the suspension and mentioned certain improprieties in the Prison's kitchen that Matsey thought the Prison Board should be investigating. Matsey also met with Ceraso on February 12, 2001. Matsey mentioned the alleged kitchen improprieties to Ceraso, and reported his concerns about security at the Prison. He also requested a name-clearing hearing. Ceraso told Matsey to put his request in writing.

While Matsey was serving his suspension, the Prison Board was informed of a civil rights lawsuit brought by an inmate against Westmoreland County based upon allegations of excessive force by Matsey arising from a November, 1996, incident. An attorney for the County determined that the lawsuit had some merit, despite an inconclusive internal investigation, and recommended that the County settle. The attorney also advised that the Prison take some remedial action in case a future abuse case was brought against the employees involved, such as counseling.

The Prison Board chose to terminate Matsey's employment when his suspension ended in April, 2001.[4] Scalzott was asked to retire, but when he refused, he too was fired. Whirlow was either forced to retire early or allowed to accept early

---

[4]After Matsey was suspended but before he was terminated, Matsey's attorney sent the Prison Board a letter requesting a post-suspension hearing. No hearing was ever held.

retirement instead of being fired.

Matsey filed suit against Appellees in the Western District of Pennsylvania on September 27, 2001. Matsey claims that the decision to suspend and then terminate him was arbitrary, and motivated by his criticism of prison security and Whirlow's personal dislike of him. He also contends that he was entitled to and denied a name-clearing hearing by the Prison Board. The District Court granted Appellees' motion for summary judgment on September 29, 2004.

## II.

This Court exercises plenary review over a district court's conclusions of law, and reviews its findings of fact for clear error. *Fed. Home Loan Mortgage Corp v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003). In doing so, the Court employs the same standard as used by the district court in deciding motions for summary judgment. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

6

The role of the court is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The non-moving party may not rest on its pleadings to oppose a summary judgment motion but must affirmatively come forward with admissible evidence establishing a genuine issue of fact. *Celotex Corp.*, 477 U.S. at 324.

## III.

While Matsey has pointed to certain irregularities in the process by which he was suspended and terminated, the Western District of Pennsylvania did not err in determining that he had not raised any material issues of fact regarding his First Amendment, Equal Protection, Due Process and PWBA claims. The District Court properly concluded that the undisputed evidence established that Matsey was terminated because he was the highest ranking officer on the night shift and in charge of the prison during a period when serious security lapses occurred, including the operation of a drug trafficking ring by an inmate, and not because he engaged in protected speech or for any other prohibited reason.

## A.

The Equal Protection Clause commands that similarly situated persons be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Jackson v. Gordon*, 145 Fed. Appx. 774, 777 (3d Cir. 2005). An equal protection claim

can be brought by a "class of one" where the plaintiff alleges that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *see also Jackson*, 145 Fed. Appx. at 777; *Eichenlaub v. Twp. of Indiana*, 385 F.2d 274, 286 (3d Cir. 2004) ("The Supreme Court has held that a 'class of one' can attack intentionally different treatment if it is 'irrational and wholly arbitrary.'") (quoting *Olech*).

In granting summary judgment on Matsey's "class of one" equal protection claim, the District Court held that: (1) he was not similarly situated to other shift commanders because night shift commanders, such as him, are in charge of the operation of the Prison, whereas day shift commanders are not; (2) Matsey was not similarly situated to other night shift commanders because of other conduct by him; (3) the discipline of Matsey was rationally related to his conduct; and (4) he was treated the same as Scalzott and Whirlow, as all three lost their jobs in the aftermath of the Whethers scandal.

This Court agrees with the District Court's determination that Matsey was not similarly situated to other shift commanders. Unlike those shift commanders, the night shift commander is in charge of the Prison during his time on duty, as higher ranking officials such as the warden or deputy warden are not at the Prison at night. Given that Matsey had unique responsibility for the operations of the Prison during his

8

shift, he is not similarly situated with other shift commanders, who worked under the supervision of higher ranking officials. It was on Matsey's watch when Whethers conducted some of his illegal activities.

The District Court correctly noted that there were additional incidents involving Matsey that distinguish him from other shift commanders, including lieutenants who also worked the night shift. Matsey does not dispute that Whethers and other inmates on his unit received an extra meal during the night shift on June 18, 2000, and he is correct that this was not prohibited by Prison policy.

As the District Court observed, however, this extra meal should be viewed in the greater context of the Whethers scandal, which revealed a pattern of favoritism and special treatment given to Whethers. On June 18, 2000, no inmates other than Whethers and those in his unit doing night shift work received an extra meal, despite having performed comparable work as other units on the night shift. No other night shift commanders permitted inmates to be provided with extra meals with near the frequency that Matsey allowed.

The larger Whethers scandal also casts a shadow on the eighteen minute private conversation that Matsey had with Whethers in April, 2000. The record does not reveal the substance of the conversation. While it may not have been prohibited or particularly unusual, Matsey has not pointed to any other shift commanders who had such extensive private contact with an inmate at the center of a major scandal.

9

Additionally, none of the other lieutenants who served as night shift commander were involved in a lawsuit brought by a prisoner involving allegations of abuse by the lieutenant. Matsey was personally involved in the actions that the prisoner alleged were impermissibly abusive, rather than being implicated in his supervisory capacity. While the internal investigation cleared him of the excessive force allegations, it did reveal that the Prison's policy requiring videotaping of all prisoner cell extractions was violated. Despite the fact that the investigation refuted the abuse claims, the County settled the lawsuit based on its attorney's conclusion that it would not prevail at trial.

We conclude that the District Court's determination that Matsey was not similarly situated to the other shift commanders is correct. Moreover, although the District Court did not hold that Matsey was similarly situated to Scalzott and Whirlow, it noted that, like Matsey, they both lost their jobs.[5] Scalzott was given the option to resign or be fired, and chose to be fired. Whirlow was offered the choice of staying on at the Prison to assist the interim warden during the transition period until he became eligible for early retirement, or be fired that day. Whirlow chose to stay on and took early retirement in April, 2001. We note that Matsey has not demonstrated that he is similarly situated to either Scalzott or Whirlow, and argues only that he was treated differently from them. It is significant, however, that, like Matsey, Scalzott and Whirlow were in

---

[5]The District Court's opinion states that "[t]o the extent that Matsey can be considered as substantially similar to Warden Scalzott or Deputy Warden Whirlow [,] both of these men were similarly removed from their positions." (Op. at 25)

10

charge of the Prison during their time on duty, and also lost their jobs as a result of the Whethers scandal.

B.

A public employee alleging that his employer retaliated against him for exercising his right to free speech must establish three elements to successfully oppose a motion for summary judgment. *Swineford v. Snyder County Pennsylvania*, 15 F.3d 1258, 1270 (3d Cir. 1994); *see also Fogarty v. Boles*, 121 F.3d 886, 888 (3d Cir. 1997); *Green v. Philadelphia Housing Auth.*, 105 F.3d 882, 885 (3d Cir. 1997). First, he must establish that his speech was protected. *Swineford*, 15 F.3d at 1270. Second, he must demonstrate that he suffered some adverse employment action by his employer. *Id*. Next, he must prove that his protected speech was a substantial or motivating factor for the adverse employment action. *Id.* If the plaintiff meets this burden, the defendant can still defeat the claim by establishing that he would have taken the same action absent the plaintiff's protected speech. *Id.*

The District Court granted summary judgment for Appellees, concluding that: (1) his criticisms of Whirlow and Prison security, as well as his comments regarding improper activities of the head of the Prison's kitchen, were not matters of public concern and thus were not protected speech; (2) his speech on these subjects was not a substantial or motivating factor in the Prison Board's decision to fire him; and (3) the Prison Board would have terminated Matsey irrespective of any speech by him.

11

In order to establish that he engaged in a protected activity, Matsey must demonstrate that he spoke on a matter of public concern, and that his interest in speaking on these matters outweighed the government's interest in suppressing his speech. *See Pickering v. Board of Educ. of Twp. High Sch. Dist. 205, Will County,* 391 U.S. 563 (1968). The District Court correctly noted that much of Matsey's speech was simply criticism of the job performance of Whirlow, his supervisor, which does not fall into the category of protected speech. The Supreme Court in *Connick v. Myers* wrote that "the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." 461 U.S. 138, 149 (1983).

Moreover, Matsey cannot "establish[] that the exercise of his First Amendment rights played some substantial role in the relevant decision." *Suppan v. Dadonna*, 203 F.3d 228, 236 (3d Cir. 2000). He has not demonstrated that his complaints about Whirlow, Prison security or other matters played a substantial, if any, role in the decision to terminate him. To the contrary, the record strongly suggests that Matsey was fired because he was in charge of the Prison on the night shift during the period in which Whethers ran the drug trafficking operation, and was centrally involved in the prisoner abuse case settled by the County. While Matsey's comments to Ceraso regarding improprieties in the Prison's kitchen may have been made shortly before he was fired, that temporal proximity is not suggestive given the other significant events

12

occurring at the same time.[6]

C.

The Supreme Court has recognized that when a public employer publishes or otherwise disseminates false and stigmatizing information in connection with an employee's termination, that employee has a due process right to a name-clearing hearing. *Board of Regents v. Roth*, 404 U.S. 564 (1972). Contrary to Matsey's assertion, a public employee is not entitled to a name-clearing hearing simply because the government "terminates an employee for reasons that impugn the employee's reputation, honor or integrity. . . ." (Appellant's Br. at 51.) The government employer must publish or disseminate the false and stigmatizing information to the public. *Chabal v. Reagan*, 841 F.2d 1216, 1223 (3d Cir. 1988); *Poteat v. Harrisburg School District*, 33 F. Supp. 2d 384, 391-92 (M.D. Pa. 1999).

Matsey has not established that the Appellees published or otherwise disseminated false and stigmatizing information to the public. A plaintiff must establish that the particular defendant was responsible for publicly revealing the defamatory information. *See McMath v. City of Gary*, 976 F.2d 1026 (7th Cir. 1992). The news articles in the record, however, reveal only that Ceraso confirmed that Matsey had been first suspended and then terminated, which are undisputedly true statements.

---

[6]To the extent that the District Court's decision on the PWBA claim is based upon the same analysis of Matsey's First Amendment claim, we will affirm the District Court's grant of summary judgment on the state law claim as well.

Matsey is not entitled to a name-clearing hearing to correct false and stigmatizing information that was published or disseminated by someone other than Appellees, such as through independent media investigation or speculation, or because his attorney chose to speak with a reporter. *Roth* does not impose an obligation on government employers to correct false information published or disseminated by others.[7]

IV.

For the reasons set forth above, the Order and Opinion of the Western District of Pennsylvania granting the motion for summary judgment of the Appellees will be affirmed.

---

[7]The Court thus not need to address whether Matsey's request for a name-clearing hearing was adequate, as he is not entitled to one in the first instance.