Charles KYLE, Plaintiff–Appellant,

v.

MORTON HIGH SCHOOL, District 201,
Margaret A. Kelly, Judy Thompson,
et al., Defendants–Appellees.

No. 97–2081.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 1997.

Decided May 11, 1998.

John J. Casey, Harry Golter (argued), Hamblet, Casey, Oremus & Vacin, Chicago, IL, for Plaintiff–Appellant.

Ronald Cope, John F. Donahue (argued), Ancel, Glink, Diamond, Cope & Bush, Chicago, IL, for Defendants–Appellees.

Before CUDAHY, FLAUM and MANION, Circuit Judges.

PER CURIAM.

One of the defendants, Morton High School (Morton), did not renew the teaching contract of the plaintiff, Charles Kyle. Kyle sued the school district and members of its board in federal court, seeking damages and equitable remedies for deprivation of various federal constitutional rights under the Civil Rights Act of 1871, Rev. Stats. §§ 1979, 1980, as amended, 42 U.S.C. §§ 1983, 1985(3), and for wrongful termination and intentional infliction of emotional distress under Illinois law. The district court dismissed the federal causes of actions for failure to state a claim upon which relief can be granted, *see* Fed. R.Civ.P. 12(b)(6), and, in the absence of the federal claims, declined to exercise supplemental jurisdiction over Kyle's state law counts, *see* 28 U.S.C. § 1367(c)(3).

Kyle appeals, contending the district court dismissed his federal claims improperly. The dismissal ended Kyle's district court case, and we now conduct an independent review of the propriety of the dismissal. *See* 28 U.S.C. §§ 1291, 1294; *Salve Regina College v. Russell*, 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Stevens v. Umsted*, 131 F.3d 697, 700 (7th Cir.1997). In our review we consider well-pleaded factual allegations in the complaint to be true. We make permissible inferences in the plaintiff's favor, and our recitation of the facts reflects this principle. *See Mallett v. Wisconsin Div. of Vocational Rehabilitation*, 130 F.3d 1245, 1248 (7th Cir.1997).

According to Kyle's amended complaint, he was the Director of Community Education and Assistant to the Superintendent at Morton in Cicero, Illinois. At a special meeting of the Morton Board of Education (the Board) on March 27, 1996 (the Board Meeting), the Board resolved to honorably dismiss certain support staff employees. The Board explained that the employees' positions were being eliminated to save money. According to the complaint, however, "[t]he reason alleged by the Board for the elimination of Plaintiff's position was a sham. There was no financial benefit to Morton eliminating Plaintiff's position." The complaint states that "[s]hortly after the March 27, 1996, executive session, Plaintiff was advised by a Board Member and others who attended the meeting that the reason for Plaintiff's termination was for political and advocacy reasons. Thus, Defendants acted in knowing violation of Plaintiff's First Amendment rights to free speech and association." The complaint also alleges that the "named individual defendants have acted together and in conspiracy with other individuals who are politicians or political functionaries to deprive Plaintiff of his position, to hinder and harass him in seeking new employment or contract work and to generally punish Plaintiff for political

and advocacy activities which the conspirators deemed adverse to their political interests and which they intended to stifle by their actions against Plaintiff." Am. Compl. ¶¶ 3, 6, 8, 10, 12.

## I. Due process claim

 In Count I of the complaint, Kyle maintains that under the Illinois School Code he was entitled to a written notice of dismissal that specified the true reason he was fired.[1] Kyle argues that because his notice of dismissal allegedly gave an inaccurate reason for his termination, he was dismissed without adequate notice of his dismissal. In Kyle's memorandum in opposition to the motion to dismiss, Kyle also asserted that the Board failed to comply with the Illinois Open Meetings Act, 5 Ill. Comp. Stat. 120/1–3, because the record of the Board Meeting does not reflect any discussion of the reasons for Kyle's termination.[2] Because of these alleged procedural irregularities, Kyle argues, his firing deprived him of due process and a property interest in his public employment.

The district court concluded that, as a nontenured teacher, Kyle had no property interest in his job under Illinois law. Therefore, the Constitution did not entitle Kyle to due process. *See Austin v. Board of Educ.,* 562 F.2d 446, 452 (7th Cir.1977); *Miller v. School Dist. No. 167,* 500 F.2d 711, 712 (7th Cir.1974). Kyle asserts that under Illinois case law subsequent to *Austin* and *Miller,* when the notice of termination does not provide the true reason for a nontenured teacher's dismissal, the dismissal is void. The

district court rejected the plaintiff's interpretation of these more recent state cases, *Hampson v. Board of Education,* 215 Ill. App.3d 817, 159 Ill.Dec. 385, 576 N.E.2d 54 (Ill.App.Ct.1991), and *Howard v. Board of Education,* 160 Ill.App.3d 309, 112 Ill.Dec. 131, 513 N.E.2d 545, 547 (Ill.App.Ct.1987), on the grounds that "in the plaintiff's case defendants did specify the reason for his dismissal—shortage of funds. Therefore, the notice the plaintiff received was not defective." The district court did not address Kyle's contention that the Board violated the Open Meetings Act by failing to record any discussion of the reasons for Kyle's termination.

On Kyle's claim of a due process violation for deprivation of a property interest in his probationary teaching position, the district court read our precedents correctly. Kyle's due process claim fails because, under Illinois law, he had no property interest in his job at Morton. Thus, for Due Process Clause purposes, it is irrelevant whether the notice of dismissal of a probationary teacher violated the procedural requirements of the Illinois School Code, or whether the Board Meeting complied with the Illinois Open Meetings Act. Even assuming that intervening decisions by the Illinois appellate courts after *Miller* established stricter procedural requirements for the dismissal of a probationary teacher under the Illinois School Code, these procedural refinements could not create a property interest in Kyle's position as a probationary teacher. *See Fleury v. Clayton,* 847 F.2d 1229, 1231 (7th Cir.1988); *see also Patterson v. Portch,* 853 F.2d 1399, 1405 (7th Cir.1988) (noting property interest for

1. Prior to amendment by P.A. 90–548, under § 24–11 of the Illinois School Code of 1961, "Any teacher who has been employed in any district as a fulltime teacher for a probationary period of 2 consecutive school terms shall enter upon contractual continued service *unless given written notice of dismissal stating the specific reason therefor,* by certified mail, return receipt requested by the employing board at least 60 days before the end of such period." 105 Ill. Comp. Stat. 52. 4–11 (emphasis added). The term " 'teacher' means any or all school district employees regularly required to be certified under law relating to the certification of teachers." *Id.* This provision only applies to school districts with a population less than 500,000. *Id.*

The "Education Reform" amendments made during the 1997 Special Session of the Illinois General Assembly reduced the notice period from 60 to 45 days, increased the probationary period from two years to four years for certain newly-hired teachers, and made various other changes to § 24–11 effective January 1, 1998, none relevant to this appeal.

2. According to § 2.06 of the Open Meetings Act, "All public bodies shall keep written minutes of all their meetings, whether open or closed. Such meetings shall include, but need not be limited to: ... (3) a summary of discussion on all matters proposed, deliberated, or decided, and a record of any votes taken." 5 Ill. Comp. Stat. 120/2.06.

due process purposes requires that "the law establish[ ] *substantive* criteria for when the plaintiff could be deprived of the interest") (emphasis added); *cf. Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) ("[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct."). Kyle does not claim that developments in Illinois law since *Miller* have established that a probationary teacher can be fired only for misconduct, so it is still true that a probationary teacher lacks a property interest in his job for Due Process Clause purposes.

Whether an Open Meetings Act confers substantive rights for Due Process Clause purposes seems to be a question of first impression among the federal courts of appeals, but, at least in the case of the Illinois act, it is not a difficult question. There is nothing in the language of the Open Meetings Act that indicates any such substantive limitations on the termination of Illinois' public employees. Kyle has neither cited case law nor presented legal analysis suggesting otherwise. Lacking a tenure right in his former position, Kyle had no property interest entitling him to due process under the Fifth and Fourteenth Amendments. *See Jungels v. Pierce,* 825 F.2d 1127, 1130 (7th Cir.1987).

■ It is so firmly established that procedural requirements alone cannot be the basis for a property right that we consider another possible interpretation of Kyle's position. Charitably construed, Kyle's real argument seems to be that because of procedural lapses attending his termination, under Illinois law he was really not terminated. Therefore, he has become a tenured teacher, and it was the defendants' failure to offer him a contract for another year that deprived him of a constitutionally-protected property right: "Since Plaintiff's position was renewed by operation of law for the 1996 school year, he is fully tenured." Am. Compl. ¶ 8. In fact, Kyle's pendent state law claim for wrongful termination seeks, among other things, a de-

claratory judgment that his termination was null and void. Am. Compl. ¶ 16. If granted, such a judgment might conceivably result in Kyle's becoming tenured. Kyle appears to have satisfied all of the conditions for tenured status except the "requirement" that he *not* receive a timely notice of dismissal before the end of his probationary period. *See* 105 Ill. Comp. Stat. 5/24–11 (West 1993).

■ As a claim under § 1983, however, this argument does not survive close scrutiny. It amounts to a complaint that the defendants have prevented Kyle from *acquiring* a property right. This is perhaps a deprivation of sorts in ordinary language, but it is not a cause of action under § 1983, for good reason. It would tend to erode the distinction between deprivations of substantive rights guaranteed by the Constitution and deprivations of procedural interests under state law, a distinction at the heart of Due Process Clause jurisprudence. *See, e.g., Loudermill,* 470 U.S. at 541, 105 S.Ct. at 1492–93; *Shvartsman v. Apfel,* 138 F.3d 1196, 1199–1200 (7th Cir.1998); *Kim Constr. Co. v. Board of Trustees,* 14 F.3d 1243, 1246 (7th Cir.1994). A procedurally-flawed firing of a probationary employee may have the effect of depriving the employee of an *opportunity* to attain a property right (tenured status), but since that property right does not "presently securely belong[ ]" to the employee, *Cornelius v. LaCroix,* 838 F.2d 207, 210 (7th Cir.1988), the loss of the opportunity to acquire property is not a deprivation of a constitutional right. "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has *already acquired* in specific benefits." *Board of Regents v. Roth,* 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972) (emphasis added).

■ The Supreme Court has said, however, that "the normal meaning of entitlement includes a right or benefit for which a person qualifies, and it does not depend upon whether the right has been acknowledged or adjudicated." *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 477, 112 S.Ct. 2589, 2595, 120 L.Ed.2d 379 (1992). Although Estate of Cowan did not involve § 1983, the Court cited *Roth,* a leading case on property

interests and § 1983, as support for this statement. Since the implications of the Court's pronouncement in *Estate of Cowart* for § 1983 litigation, if any, are unclear, as an additional basis for our decision we will consider Kyle's argument that he already "qualifies" as a tenured teacher by operation of Illinois law.

■ Kyle has not referred us to any Illinois case establishing that a notice of dismissal to a probationary teacher is defective if the notice provides a false reason for the dismissal. In fact, Illinois courts have indicated that the purpose of requiring a *specific* reason is "to enable the teacher to refute the charge." *Howard*, 112 Ill.Dec. at 133, 513 N.E.2d at 547; *see also Wade v. Granite City Community Unit Sch. Dist. No. 9*, 71 Ill. App.2d 34, 218 N.E.2d 19, 20 (Ill.App.Ct. 1966). While dicta in *Burns v. Board of Education*, 47 Ill.App.3d 589, 5 Ill.Dec. 882, 362 N.E.2d 353, 355 (Ill.App.Ct.1977) suggested that the specific reason must "be truthful," the Illinois Supreme Court subsequently clarified that the "essence" of the requirement was to permit a teacher to contest the grounds for dismissal. *See Grissom v. Board of Educ.*, 75 Ill.2d 314, 26 Ill.Dec. 683, 686, 388 N.E.2d 398, 401 (1979). If the reason for requiring the Board to explain its action is to permit the teacher to contest the Board's explanation, then providing the teacher an inaccurate reason does not undermine this purpose. In any event, Kyle's argument that he automatically qualifies for tenure cannot succeed under the Illinois School Code. "Since the teacher has no procedural right to appear before the employer board to question the reasonableness or truthfulness of the reasons" for his dismissal, Illinois courts will not entertain a challenge to the reasons unless "the reasons *on their face* are clearly arbitrary or without substantial basis in fact." *Burns*, 5 Ill.Dec. at 885, 362 N.E.2d at 356 (emphasis added). The Board's explanation is hardly so deficient.

We express no view whether, under Illinois law, Kyle would have been entitled to tenure if, under Illinois law, he had no notice, or what amounted to no notice, of his dismissal. *See Donahoo v. Board of Educ.*, 413 Ill. 422, 109 N.E.2d 787 (1952); *Burns*, 5 Ill.Dec. at 884–85, 362 N.E.2d at 355–56.

■ Under the Open Meetings Act, a court may declare "null and void any final action taken at a closed meeting in violation of this Act." 5 Ill. Comp. Stat. 120/3(c) (West 1997). This is the only circumstance in which the Open Meetings Act authorizes invalidation of an action for noncompliance. Part of the Board Meeting here was conducted in a closed session. Kyle's opportunity to request any remedy under the Open Meetings Act, however, expired 60 days after the Board Meeting. *See* 5 Ill. Comp. Stat. 120/3(a) (West 1997); *Paxson v. Board of Educ.*, 276 Ill.App.3d 912, 213 Ill.Dec. 288, 296, 658 N.E.2d 1309, 1317 (Ill.App.Ct.1995); *Verticchio v. Divernon Community Unit Sch. Dist. No. 13*, 198 Ill.App.3d 202, 144 Ill.Dec. 379, 382, 555 N.E.2d 738, 741 (Ill. App.Ct.1990). *But see Safanda v. Zoning Bd. of Appeals*, 203 Ill.App.3d 687, 689–90, 149 Ill.Dec. 134, 561 N.E.2d 412, 414–15 (Ill. App.Ct.1990). Kyle filed his original complaint in the district court on November 19, 1996, more than six months after the March 27, 1996 Board meeting. Here we are considering the Open Meetings Act time limit purely as a matter of Illinois law—to determine as a preliminary matter whether Kyle was even entitled to due process. We are not at the point of considering whether Kyle was deprived of due process—a constitutional question that would be governed by a two-year time limit, if Kyle has otherwise stated a claim. *See Kalimara v. Illinois Dep't of Corrections*, 879 F.2d 276 (7th Cir.1989); *see also Farrell v. McDonough*, 966 F.2d 279, 280–81 (7th Cir.1992). So for present purposes the shorter Open Meetings Act statute of limitations is binding on Kyle.[3] Under

---

3. Section 3(a) of the Open Meetings Act reads in relevant part:

> Where the provisions of this Act are not complied with, or where there is probable cause to believe that the provisions of the Act will not be complied with, any person, including the State's Attorney of the county in which such noncompli-

ance may occur, may bring a civil action ... prior to or within 60 days of the meeting alleged to be in violation of this Act or; if facts concerning the meeting are not discovered within the 60–day period, within 60 days of the discovery of a violation by the State's Attorney.

Illinois law, therefore, Kyle is time-barred from claiming tenure through the Open Meetings Act, even if that were possible. The defendants raised this point in their brief; Kyle ignored it in his reply brief. Kyle has not established that he had already qualified for tenure by operation of Illinois law.

■ In his appeal, Kyle also alleges that the failure of the Board to offer him a newly created position of "Assistant Superintendent and Director of Human Resources and Public Relations," for which Kyle claims he was fully qualified, violated his property rights. He notes that the Board resolution terminating him provided that vacancies arising for the 1996–97 school term, or within one year of the beginning of that term, would be tendered to terminated employees who were qualified to fill them. Kyle did not raise this argument before the district court—indeed, he hardly develops it in his brief before this court—so he has waived his right to raise it on appeal. *See American Nat'l Bank & Trust Co. v. Regional Transp. Auth.*, 125 F.3d 420, 438 n. 17 (7th Cir.1997). For the same reason, we do not consider Kyle's argument, also first raised before this court, that his complaint states a claim for violation of a liberty interest. In reviewing a motion to dismiss for failure to state a claim, we will allow a plaintiff to make additional factual allegations for the first time on appeal, *see, e.g., Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962, 963–64 (7th Cir.1992), but we will not entertain new issues, *see Dawson v. General Motors Corp.*, 977 F.2d 369, 372 n. * (7th Cir.1992).

## II. First (and Fourteenth) Amendment(s)

■ Kyle also claims he was terminated for "political and advocacy reasons" and that the defendants conspired together and with others to deprive him of his position and prospective positions "for political and advocacy or perceived political and advocacy ac-

tivities which the conspirators deemed adverse to their political interests. . . ." Yet nowhere in his sparse complaint does he mention that he uttered any protected speech or engaged in any protected conduct or "activity" for which he was allegedly fired. The board member who advised him that his termination was for "political and advocacy" reasons apparently did not say "whose" reasons. This glaring gap in the complaint leaves total speculation as the only alternative for the court to come up with any set of facts justifying relief. That is not the court's job. To avoid dismissal, the complaint for a First Amendment violation must at least put the defendants on notice that some specific speech or conduct by the plaintiff led to the termination.

■ This is not a particularly cumbersome assignment. "In order to establish a First Amendment retaliation claim, the facts alleged in the complaint must show that (1) the speech in which the plaintiffs engaged was constitutionally protected under the circumstances, and (2) the defendants retaliated against them because of it." *Gustafson v. Jones*, 117 F.3d 1015, 1018 (7th Cir.1997). The district court concluded that Kyle's complaint failed to provide any factual allegations which would alert the court and the defendants as to the nature of his claim, and so dismissed the claim. As previously mentioned, we review the dismissal of the complaint *de novo*, and accept the well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995).

■ Under the federal rule of notice pleading, " 'all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and *the grounds upon which it rests*.' " *Leatherman v. Tarrant County Narcotics and Intelligence Coordina-*

---

5 Ill. Comp. Stat. 120/3(a). Although there is a conflict among the districts of the Illinois Appellate Court regarding when a private party's challenge to the Open Meetings Act is timely, we are persuaded by the careful analysis of the issue in *Paxson. See* 213 Ill.Dec. at 293–95, 658 N.E.2d at 1315–17. The addition of the qualification, "if

facts concerning the meeting are not discovered within the 60–day period," not effective until January 1, 1995, and so inapplicable in any of the Illinois cases construing § 3(a), does not enlarge the circumstances under which a meeting can be challenged.

*tion Unit,* 507 U.S. at 168, 113 S.Ct. at 1163 (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) (footnote and citation omitted)) (emphasis added). For fair notice to be given, "a complaint must at least 'include the operative facts upon which a plaintiff bases his claim.'" *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir.1992) (quoting *Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 198 (7th Cir.1985)). A plaintiff "need not plead facts; he can plead conclusions. [However,] the conclusions must provide the defendant with at least minimal notice of the claim." *Jackson v. Marion County,* 66 F.3d 151, 153–54 (7th Cir.1995). The issue we review is whether "sufficient facts [have been] pleaded to allow the district court to understand the gravamen of the plaintiff's complaint." *Doherty v. City of Chicago,* 75 F.3d 318, 326 (7th Cir. 1996).

▮▮▮ Before *Leatherman,* on occasion we would apply a more stringent standard for notice pleading in civil rights cases; we no longer do so. We judge Kyle's complaint by the same standards we would apply in non-civil rights cases, and would reach the same result if it were, for example, a negligence or contract dispute. By way of illustration, in *Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 654 (7th Cir.1984), a complaint alleged "predatory pricing" and "price-fixing" but we held that the complaint did not state a claim for antitrust violations, but rather for fraud. We commented that the familiar refrain in motion to dismiss cases, "'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,'" *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102, "has never been taken literally." *Sutliff,* 727 F.2d at 654. Obviously the "set of facts" has to be the plaintiff's, not a figment of someone else's imagination. The plaintiff cannot state a claim "by attaching a bare conclusion to the facts he narrates." *Id.* We apply the same standard to Kyle's complaint as we did in *Sutliff;* the civil rights violations he alleges must give some notice of the actual claim.

The defendants assert that Kyle has not "identif[ied] any facts which would give the defendants notice of his claim." Appellee's brief at 21. *Doherty v. City of Chicago,* 75 F.3d 318, 326 (7th Cir.1996), specifically addressed our post-*Leatherman* standard of review of civil rights cases, and concluded that "It is insufficient to make bald allegations that state procedures were biased against a litigant on the basis of political affiliation." Doherty's and Kyle's complaints both plead conclusions; but the mere fact they plead conclusions does not render them insufficient. Their insufficiency comes from the fact that the conclusions fail to give notice of the claim: "something more than a conclusory allegation is necessary." *Id.* Moreover, the defendants' ability to even investigate Kyle's claim is frustrated by this complaint. For example, the Morton School Board cannot ask its board members if they were aware of the speech, conduct, or political association engaged in by Kyle—because none is alleged. How can the School Board determine whether the speech engaged in by the plaintiff was not protected, when they have no idea to what speech, if any, Kyle is referring? "There must be sufficient facts pleaded to allow the court and the defendants to understand the gravamen of the plaintiff's complaint." *Id.*

▮▮▮ Probably the cases most similar to Kyle's are *Barkoo v. Melby,* 901 F.2d 613 (7th Cir.1990), and *Fogarty v. Boles,* 121 F.3d 886 (3d Cir.1997). In *Barkoo,* an employee was terminated after the publication of a newspaper article. We held that "[t]o the extent Barkoo alleges that her employers retaliated against her because they *thought* she was engaged in First Amendment protected speech on an issue of public concern, we reject the notion that this allegation brings her claim within the requirements of § 1983." 901 F.2d at 619. In other words, it is not enough to allege mere retaliation due to an improper motive; there must be an allegation of protected conduct. There was no violation of free speech rights "when the speech at issue never occurred." *Id.* In *Fogarty,* a public school teacher was terminated due to the principal's mistaken belief that the teacher had called the press. The Third Circuit held that "in the absence of speech,

or, at the extreme, intended speech, there has been no constitutional violation cognizable under section 1983 based on an asserted 'bad motive' on the part of defendant." 121 F.3d at 890. While *Fogarty* differs from Kyle's case in that Fogarty specifically disclaimed engaging in any speech, *Fogarty* stands for the proposition that gravamen of a First Amendment claim is speech. Here Kyle has to allege something more than political innuendo in order to put the defendants on notice of his claim.

Our case law is replete with examples of complaints which omit the factual basis of a claim, and therefore, fail to give fair notice of the grounds the claim rests upon. For example, in *Albiero v. City of Kankakee*, 122 F.3d 417, 420–21 (7th Cir.1997), a complaint alleged a "conspiracy," but did not elaborate or contain any other allegations. We held that "even under the lax standards of notice pleading under the federal rules" this allegation was insufficient to give notice of an equal protection claim. *Id.* at 421. Albiero did not claim that he was discriminated against because of his race, or sex, or political affiliations; he did not allege that others had been treated better than he has. In the absence of any notice of on what basis Albiero was denied equal protection, his complaint failed to state a claim. Just as Albiero's complaint was insufficient because it failed to give the court and the opposing party fair notice as to the nature of his equal protection claim, Kyle's complaint fails to give fair notice as to whether he engaged in any protected conduct whatsoever, and what the basis of his termination was.

In *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir.1992), a plaintiff seeking § 1983 damages also requested declaratory and injunctive relief, on the basis that a letter sent by the defendant to a Prisoner Review Board contained lies. However, Lucien failed to identify anything in the letter that was false or even misleading. *Id.* We held that Lucien was required to at least identify the lies in the letter to state a claim. "Lucien's failure to allege anything more than that the defendant lied in her letter, without even stating what those lies are, is simply not enough to state a claim for declaratory or injunctive relief." *Id.* Kyle's failure to identify his protected speech or conduct is analogous to Lucien's "bald assertion" that the letter contained lies. Neither the Morton School Board nor Preiner would be able to craft a meaningful response to such a complaint. See Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund, *25 F.3d 417, 421 n. 5 (7th Cir. 1994)* ("a complaint need only set out a generalized statement of facts from which the defendant can craft a responsive pleading. Fed.R.Civ.P. 8, see also 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (2d ed.1990).").

*Doherty, Albiero,* and *Lucien* are not isolated exceptions in this circuit. Rather, it appears that the law reporters are brimming with instances where a complaint failed to state a claim because of the lack of fair notice of the operative facts or the gravamen of the statement for relief. *See, e.g., Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 660 (7th Cir.1992) ("The liberal federal notice pleading allowed by the federal rules requires the complaint to include the operative facts upon which a plaintiff bases his claim."); *Panaras v. Liquid Carbonic Industries Corp.*, 74 F.3d 786, 792 (7th Cir.1996) ("While federal notice-pleading allows for a generous reading of a complaint, in order to resist a motion to dismiss, the complaint must at least set out facts sufficient to 'outline or adumbrate' the basis of the claim."); *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1430 (7th Cir.1993) ("It is true that the original theory of the Federal Rules of Civil Procedure was that the plaintiff ought to be permitted to fumble around searching for a meritorious claim within the elastic boundaries of a bare-bones complaint until the final pretrial conference. No judge or lawyer in this age of crowded dockets takes that completely seriously ..."); *Perkins v. Silverstein*, 939 F.2d 463, 467 (7th Cir.1991) ("While plaintiffs make clear in their original complaint what their claims are, they fail to identify the grounds upon which their claims are based. This they must do, even under the liberal notice pleading of Rule 8(a)." (footnote and citation omitted.)); and *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir.1995) ("The complaint, however, is deficient because it fails to include a factual basis

to describe with particularity the bias that the plaintiff alleges. Although Fed.R.Civ.P. 8 does not require detailed factual pleading, a plaintiff's assertions must still direct the defendant to the factual cause of the plaintiff's alleged injury."). Without belaboring the point any more, the Supreme Court and other circuit courts have similarly recognized the requirement that a complaint must give fair notice of the nature of the action. *See* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216 n. 20 & n. 28, (2d ed. 1990 & Supp.1997), and text accompanying (collecting cases from Supreme Court and the First, Second, Third, Fifth, Sixth, Seventh, Eighth, Tenth and Eleventh U.S. Circuit Courts of Appeals).

Had the defendants sought a more definite statement under Rule 12(e), instead of filing a 12(b)(6) motion to dismiss, perhaps Kyle would have specifically identified the speech or political association he claims caused the retaliation. Or perhaps he would have described the protected conduct he performed, and at least indicated which activity motivated the defendants to terminate him. Despite the absence of a formal request for a more definite statement, Kyle was alerted to this deficiency in his complaint before he filed an amended complaint, but failed to address it in his amended complaint. This is not a case where the plaintiff has been tripped up by "mere technicalities," but rather, the plaintiff has omitted the gravamen of his complaint.[4]

Kyle's complaint fails to give fair notice to the court and the opposing party of the operational facts of his complaint. By simply reciting the rumor that he was terminated for "political and advocacy reasons," he fails to identify any activity on his part, even in the most general terms, that triggered his termination, and therefore, he has failed to give the defendants and the court "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Conley v. Gibson,* 355

U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

## III. Claim of conspiracy to interfere with civil rights

■■■ Count III of Kyle's complaint alleges that the defendants conspired with unnamed individuals to injure Kyle in retaliation for his political advocacy, in violation of 42 U.S.C. § 1985(3). The district court dismissed the complaint on two grounds, one of which was that it failed to "allege a racial, political conspiracy," per *Grimes v. Smith,* 776 F.2d 1359, 1366 (7th Cir.1985), *aff'g* 585 F.Supp. 1084 (N.D.Ind.1984) (Posner, J.). *Grimes* involved an appeal from a jury trial conducted by our Chief Judge, sitting by designation in the district court. A jury returned a verdict in favor of the plaintiffs for violation of § 1985(3). The district court granted the losing defendants' motion for a judgment notwithstanding the verdict, because on the facts of the case there was no " 'racial, or . . . otherwise class-based, invidiously discriminatory animus behind the conspirators' action,' " *Grimes,* 585 F.Supp. at 1090 (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)), and this court affirmed on that basis. Although *Grimes* did not involve a motion under Rule 12(b)(6), it is clear from the reasoning of both *Grimes* opinions that a complaint under § 1985(3) must allege a conspiracy motivated by a racial or other class-based animus.

Kyle contends that the requirement of some class-based animus applies only to conspiracies of private persons, not conspiracies involving state action. (Kyle does not allege a violation of § 1983 from a conspiracy under color of law.) He points out that the cases cited by the defendants for the proposition that § 1985(3) requires a class-based animus, including *Grimes,* all involve private conspir-

---

4. Nor can it be argued that including fair notice of the claim is burdensome on the plaintiff. Under Rule 11 of our Federal Rules of Civil Procedure, the plaintiff or plaintiff's attorney is obligated to make an "inquiry reasonable under the circumstances" and certify that the allegations made "have evidentiary support, or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for fur-

ther investigation or discovery." As Kyle has alleged a retaliatory termination in violation of the First Amendment, he (or his attorney) must have made an inquiry into this allegation before filing this complaint. Having made this inquiry, it is hardly burdensome to require the plaintiff to share his conclusion with the court and the defendants.

acies, and that it is clear from the text of the statute that no class-based animus is necessary if the conspiracy involves state action. Kyle's brief contains no references to legal authority supporting his position, nor does it contain a substantive argument " 'showing why it is sound despite a lack of supporting authority.' " *Mathis v. New York Life Ins. Co.*, 133 F.3d 546, 548 (7th Cir.1998) (per curiam) (quoting *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990)). Despite Kyle's allusion to the supposedly obvious meaning of the text of § 1985(3), his brief contains no language from that text. The issue is forfeited. *Id.* As· an alternative basis for our decision, *Munson v. Friske*, 754 F.2d 683, 695 (7th Cir.1985), is directly on point, and contrary to Kyle's position. *See also Lesser v. Braniff Airways*, 518 F.2d 538, 543 (7th Cir.1975). Finally, Kyle conceded at oral argument that if he did not state a claim under the ·other counts, he also failed to state a conspiracy claim. .

AFFIRMED.

CUDAHY, Circuit Judge, concurring in part and dissenting in part.

We have repeatedly emphasized that "apart from [Rule 9] and a tiny handful of arguably appropriate judicial supplements to it, a plaintiff in a suit in federal court need not plead facts; he can plead conclusions." *Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir.1995); *see also, e.g., Hutchinson v. Spink*, 126 F.3d 895, 900 (7th Cir.1997). "[T]here is no pleading requirement of stating 'facts sufficient to constitute a cause of action' . . . ." *Dioguardi v. Durning*, 139 F.2d 774, 775 (2d Cir.1944) (Clark, J.); *see also Homeyer v. Stanley Tulchin Assocs.*, 91 F.3d 959, 961 (7th Cir.1996) ("[The plaintiff] was not required to plead facts or evidence to support her allegations; she was not even required to include a theory of the case."). The Supreme Court has recently confirmed that in civil rights actions against municipalities, " 'all the Rules require is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Leatherman v. Tarrant County*

*Narcotics and Intelligence Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) (footnote omitted)). In applying a test derived from a heightened pleading standard for civil rights complaints to Kyle's First Amendment claim, the majority is demanding more of a civil rights plaintiff than Rule 8 requires. Because this is inconsistent with *Leatherman*, I respectfully dissent from the dismissal of Count II.

Kyle's complaint satisfies the requirement described in *Gustafson v. Jones*, 117 F.3d 1015 (7th Cir.1997), that the complaint allege that the defendants retaliated against the plaintiff on the basis of constitutionally-protected conduct. *See Gustafson*, 117 F.3d at 1018. The complaint expressly alleges that one of the defendants told Kyle that Kyle was dismissed for Kyle's political conduct, and this can support an inference of retaliation. *See id.; see also McGill v. Board of Educ.*, 602 F.2d 774, 780 (7th Cir.1979). (There is no basis for the majority's characterization of the statement as a "rumor.") Therefore *Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir.1996) ("Ms. Doherty nowhere has alleged that the decisionmaker knew of her nonaffiliation with the Democratic party . . . ."), is inapplicable. For this same reason, neither *Lucien v. Preiner*, 967 F.2d 1166 (7th Cir.1992) (per curiam), nor *Albiero v. City of Kankakee*, 122 F.3d 417 (7th Cir.1997), is comparable. The majority's suggestion that Kyle's complaint consists of no more than a "bald assertion," maj. op. at 456, is itself, respectfully, no more than a bald assertion; it ignores this aspect of the complaint as well as the complaint's generalized statement of· facts that provide context for the claim. Thus the majority's string citation to *Talbot, Panaras, Chaveriat, Perkins* and *McTigue* is inapplicable. "If some of our opinions say (and some do) that a suit must be dismissed for failure to plead facts, usually on close scrutiny it is apparent that the real grounds for the dismissal are different . . . ." *Jackson*, 66 F.3d at 153.

Although we have suggested that a fired public employee's complaint also fails to state a First Amendment claim unless he "allege[s]

facts that could support a finding that the speech is on a matter of public concern," *Gustafson,* 117 F.3d at 1018; *see also Caldwell v. City of Elwood,* 959 F.2d 670, 672 (7th Cir.1992), defendants cite no case in which we have upheld a complaint's dismissal for that reason. *Caldwell,* which took this criterion from *Barkoo v. Melby,* 901 F.2d 613, 617 (7th Cir. 1990)—a case in which the issue was the sufficiency of the evidence presented at trial, not the dismissal of a complaint—did not rely on it. *Gustafson* reversed the dismissal of a complaint.

If a complaint pleads facts that demonstrate that the speech at issue is not on a matter of public concern, the plaintiff will of course have pleaded himself out of court, *cf. Lanigan v. Village of East Hazel Crest,* 110 F.3d 467, 474 (7th Cir.1997), and when we have dismissed a public employee's First Amendment retaliation complaint, it is generally on this basis. *See, e.g., Khuans v. School Dist. 110,* 123 F.3d 1010, 1016 (7th Cir.1997); *Lashbrook v. Oerkfitz,* 65 F.3d 1339, 1349–50 (7th Cir.1995); *Griffin v. Thomas,* 929 F.2d 1210, 1214–15 (7th Cir. 1991). In *Gray v. Lacke,* 885 F.2d 399, 411 (7th Cir.1989), we did uphold the dismissal of a complaint because it failed to allege the contents of a private conversation that allegedly provoked the plaintiff's termination. We explained that "[w]e have no way of knowing whether the conversation touched on a matter of public concern." *Id.* In stating that he was told he was fired for "political and advocacy reasons," Kyle has essentially *alleged* that he was fired for speaking on a matter of public concern; so *Gray,* where there was no suggestion that the discussion involved a matter of public concern, is easily distinguishable.

The analysis in *Gray,* moreover, is grounded in the heightened pleading standard in civil rights actions sometimes imposed in this circuit prior to *Leatherman. See Gray,* 885 F.2d at 411 ("[B]ecause Gray failed to make sufficient *factual* allegations regarding this incident, the district court properly dismissed this claim.") (emphasis added); *Musso v. Suriano,* 586 F.2d 59, 62 (7th Cir.1978) (cited as authority by Gray); *Cohen v. Illinois Inst. of Tech.,* 524 F.2d 818 (7th Cir.1975) (Stevens, J.) (*Cohen I*) (cited as authority by Musso); *Cohen v. Illinois Inst. of Tech.,* 581 F.2d 658, 663 (7th Cir.1978) (*Cohen II*) (explaining rationale of *Cohen I* and *Cohen II* as "[s]ome particularized facts demonstrating a constitutional deprivation are needed to sustain a cause of action under the Civil Rights Act"); *see also Jamieson v. Shaw,* 772 F.2d 1205, 1214–15 (5th Cir.1985) (Jolly, J., dissenting) (citing *Cohen II* as example of heightened pleading standard applied to § 1983 cases). In the wake of *Leatherman,* it is necessary to consider whether a pleading standard justified by the claim's status as a cause of action under § 1983 improperly "demand[s] a greater level of specificity" than notice pleading requires. *Duda v. Board of Educ.,* 133 F.3d 1054, 1057 (7th Cir.1998); *see Sherwin Manor Nursing Ctr. v. McAuliffe,* 37 F.3d 1216, 1218 (7th Cir.1994).

A motion to dismiss is not properly granted unless it is beyond doubt that there could be no set of facts justifying relief. The majority's report of this principle's demise, *see* maj. op. at 455, is greatly exaggerated. *See, e.g., Kelley v. Crosfield Catalysts,* 135 F.3d 1202, 1206 (7th Cir.1998). And the defendants have not even attempted to persuade us that this criterion is satisfied. Nor have they presented an argument on appeal that the complaint fails to provide them with fair notice of Kyle's First Amendment claim; they simply insist, without argument, that Rule *11* entitles them to *"facts* that would give the defendants notice of the claim." Br. of Defs.-Appellees 21 (emphasis added); *see also* maj. op. at 457 n. 4. An appeal to the inquiry requirements of Rule 11(b)(3) was also made in *Leatherman,* but the Supreme Court evidently did not consider the argument persuasive. *See Leatherman,* 507 U.S. at 167–68, 113 S.Ct. at 1162–63. "Rule 11 neither modifies the 'notice pleading' approach of the federal rules nor requires counsel to prove the case in advance of discovery." *Frantz v. United States Powerlifting Fed'n,* 836 F.2d 1063, 1068 (7th Cir.1987); *see also Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 406–07, 110 S.Ct. 2447, 2461–62, 110 L.Ed.2d 359 (1990); *Donaldson v. Clark,* 819 F.2d 1551, 1561 (11th Cir.1987) (en banc). Rule *8* does not require the plaintiff to plead the facts the majority requires, as the sample

forms in the appendix to the Federal Rules of Civil Procedure demonstrate:

> [O]ne of the forms included in the appendix to the Federal Rules of Civil Procedure states a claim for money owed for a sale of goods. The substantive allegation states, in its entirety, "Defendant owes plaintiff ___ dollars for goods sold and delivered by plaintiff between June 1, 1936 and December 1, 1936." Fed.R.Civ.P. app., Form 5. The plaintiff using this form need not state in the complaint *what the goods were, their quantity, where they were delivered, or on what date within the stated six month period the delivery took place.* Presumably, if any of these stated facts are actually unknown to the defendant, he would be entitled to proceed either by a motion for a more definite statement, see Fed.R.Civ.P. 12(e), or through the discovery devices made available in Rules 26 through 36.

*Cook v. Winfrey,* 141 F.3d 322, 328 (7th Cir.1998) (emphasis added); *see also Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992). The complaint identifies Kyle's firing as the basis for the complaint, which provides the defendants adequate notice of the claim—certainly in this case, in which the defendants do not contend that they terminated Kyle on the basis of unprotected speech or advocacy.

The majority struggles to draw inferences from the complaint that, if true, would defeat the claim, see maj. op. at 455–456, but we must construe Kyle's complaint as alleging that he engaged in political conduct and advocacy. Even if this is not the only possible inference, because it is not an unreasonable one, the plaintiff is entitled to it. *See Mallett v. Wisconsin Div. of Vocational Rehabilitation,* 130 F.3d 1245, 1248 (7th Cir.1997); Fed. R.Civ.P. 8(f). The complaint also describes the relevant conduct of the defendants and the source of Kyle's alleged injury. No more is required at this stage. "[A] rule 12(b)(6) motion ... presumes that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 889, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990); *see also Albiero,* 122 F.3d at 419 ("The other misconception is that a complaint must allege all of the facts essential to recovery under the plaintiff's legal theory.").

The majority's concern that the Board would be unable to "craft a meaningful response," maj. op. at 456, is illusory. The Board claims it fired Kyle solely for budgetary reasons, which seems to be a comprehensible rebuttal. In any event, the protection of the Board's ability to defend itself is lodged elsewhere in the civil rules. See *Early v. Bankers Life & Cas. Co.,* 959 F.2d 75, 78–79 (1992). The merger of Rule 12(b)(6) and Rule 12(e) suggested by the majority, maj. op. at 456–457, is perhaps best left to a formal amendment of Rule 12. Cf. *United States v. Guy,* No. 97–3645, slip op. at 3–4 (7th Cir. April 10, 1998). The district court never indicated that Kyle's original complaint would be dismissed if it were not amended along the lines the majority suggests, as would have been apparent with a true motion for a more definite statement. See 2 James Wm. Moore et al., Moore's Federal Practice § 12.36[8] (3d ed.1997). Further, only the proceedings following the filing of the amended complaint are before us. See *Crosfield Catalysts,* 135 F.3d at 1204–05; *Lubin v. Chicago Title & Trust Co.,* 260 F.2d 411, 413 (7th Cir.1958); *Ericson v. Slomer,* 94 F.2d 437, 439 (7th Cir.1938).

Not only is it apparent from the complaint that "some recognized legal theory exists upon which relief could be accorded" the plaintiff, 2 James Wm. Moore et al., *supra,* at § 12.34[1][b]; the gravamen of the plaintiff's complaint could not be clearer: it is that he was fired in retaliation for engaging in activity protected by the First Amendment. Under notice pleading, as the Rules' sample forms show, the gravamen of a complaint cannot be a particular fact or a legal theory, *see Homeyer,* 91 F.3d at 961; the gravamen is the grievance. Here the alleged grievance is plain; neither the district court nor the defendants ever suggested that they could not understand the nature of plaintiff's alleged grievance—there is only the defendants' unsupported assertion that Rule 11 entitles them to specific factual notice. But the plaintiff need only indicate the grounds of his complaint, not the *specific factual* grounds. The majority's analysis of plead-

ing, which states unequivocally that "[a] plaintiff 'need not plead facts,'" and then turns to consider "whether 'sufficient facts [have been] pleaded,'" maj. op. at 452–453, may prove difficult to apply consistently.

Finally, it is not clear the majority's fact-pleading requirement will help the courts recognize meritorious claims at the pleading stage of a case. In *Gustafson* we noted the difficulty of balancing the employee's free speech interest against the interests of the public employer on the basis of the pleadings alone. *See Gustafson,* 117 F.3d at 1019; *see also* Khuans, 123 F.3d at 1021 (Diane P. Wood, J., concurring). Even a determination of the preliminary issue whether a public employee's speech "addresses a matter of public concern," however, requires an assessment of the "content, form, and context of a given statement, *as revealed by the whole record." Connick v. Myers,* 461 U.S. 138, 147–48 & n. 7, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983) (emphasis added). An initial screening on general facts provided in the pleadings is inevitably difficult and may be unreliable. Such a screen may not be the best means of "promot[ing] the ends of justice," 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1029 (2d ed.1987), even if *Leatherman* allowed us more freedom to consider this goal. *See Leatherman,* 507 U.S. at 168–69, 113 S.Ct. at 1163. Applying a "public concern" test on the basis of facts supplied at the pleading stage would be no easier for a free association claim. *See Balton v. City of Milwaukee,* 133 F.3d 1036 (7th Cir.1998).

In the case of a First Amendment retaliation complaint it does not appear that we have ever upheld a motion to dismiss for failure to state a claim because it failed to allege facts indicating that the public employee was speaking on a matter of public concern, if the complaint suggested that the speech involved such matters. In light of *Leatherman,* the majority's dismissal on the basis of failure to plead sufficient facts is unwarranted. *See Lanigan,* 110 F.3d at 480 ("The allegations against the Village come close to the level of 'boilerplate vagueness.' However, we recognize that *Leatherman*

does not require [the plaintiff] to do more than he has done so far.") (internal citation omitted). With respect to Count II, the defendants' arguments do not justify judgment on the pleadings.

I join the court's opinion in full with the exception of Part II, from which I respectfully dissent.