NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 31, 2017[*]
Decided November 7, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-1939

| | |
|---|---|
| AMIR MARMARCHI, | Appeal from the |
|     *Plaintiff-Appellant*, | United States District Court for the |
| | Central District of Illinois. |
|     *v.* | |
| | Nos. 16-cv-2325 & 16-cv-2326 |
| BOARD OF TRUSTEES OF THE | |
| UNIVERSITY OF ILLINOIS, et al., | Colin S. Bruce, |
|     *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Amir Marmarchi, a former doctoral candidate in Industrial Systems Engineering at the University of Illinois, appeals the dismissal of his lawsuit against the University, his academic advisor, and several members of the academic staff. His claims have shifted during the case. On appeal he principally contends that the defendants violated his

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

free-speech rights by dismissing him from his program for threatening to report "fraud." The district court dismissed the case for failure to state a claim. Because we conclude that Marmarchi failed to adequately plead the claims that he pursues on appeal, we affirm.

We accept as true Marmarchi's well-pleaded allegations. *Arnett v. Webster*, 658 F.3d 742, 751–52 (7th Cir. 2011). For his doctoral research, Marmarchi worked with an advisor, Professor Alex Kirlik, but their relationship was rocky. In April 2013 Kirlik said that Marmarchi had completed all the experiments necessary for his dissertation, but Kirlik later said that Marmarchi needed more data. After Marmarchi passed his preliminary exams, Kirlik got upset with him for discussing his results with other dissertation-committee members. In response Kirlik refused to convene the committee to review Marmarchi's work and threatened "consequences" for similar incidents. Later, Marmarchi alleges, after he calculated results for an experiment, Kirlik pressured him to change a number in the analysis. Marmarchi refused and Kirlik told Marmarchi not to contact him anymore. Marmarchi tried to talk to him months later in order to proceed with his studies, but Kirlik would not budge. Kirlik also altered their joint submission to a conference in what Marmarchi considers an act of "sabotage" of his research. Kirlik also allegedly presented altered versions of Marmarchi's findings at other conferences when Marmarchi was not present. Finally, after Kirlik lost federal research funding, Kirlik refused to hire Marmarchi as a researcher or teaching assistant for any other projects.

After these incidents in 2015, University officials removed Marmarchi from the engineering doctoral program. The removal occurred shortly after he met with Associate Dean Anne Kopera in October. He alleges that he told her that he wanted to make a "whistleblower complaint" about "fraud by [the] faculties." She encouraged him to use the University's grievance process to provide details. That same day Marmarchi met with Kirlik, who said the department "wanted [Marmarchi] out." The next day Ramavarapu Sreenivas, the department chair, met with Dean Kopera, Kirlik, and an office administrator to discuss Marmarchi. Sreenivas removed Marmarchi from the doctoral program two days later but offered him a master's degree in engineering. Sreenivas based the removal decision, Kirlik later told Marmarchi, "in light of information received . . . in the last 24 hours." Marmarchi believes this meant his meeting with the Dean Kopera two days earlier. When Marmarchi asked the deans to explain his dismissal, they replied that they were addressing his request to apply for a master's degree in another department. (Marmarchi admits making the request but argues that this rationale was pretextual.) One month after his removal from the engineering doctoral program, Marmarchi filed the grievance that Dean Kopera had

encouraged. In the grievance he offered a "report of fabrication, and fraud against [his] advisor." The following month Marmarchi received a written notice confirming his removal from the doctoral program. The University denied his grievance the next year.

After considering a variety of legal theories that Marmarchi proposed in the district court, the judge granted the defendants' motion to dismiss the action. Among the federal-law theories were claims under the First Amendment, the due-process clause, the employment-discrimination laws covering age, 29 U.S.C. § 621; disability, 42 U.S.C. § 12101; national origin and race, 42 U.S.C. §§ 2000(e), 1981; and the Family and Medical Leave Act, 29 U.S.C. § 2611. (Marmarchi sued the University but the proper defendant is the University's Board of Trustees, so we have revised the caption accordingly.) The judge concluded that Marmarchi did not state a claim under any of these theories. In particular, the judge explained, Marmarchi's free-speech allegations were too vague to support a claim that protected speech had led to his injuries. The judge also declined to exercise supplemental jurisdiction over the state-law claims. 28 U.S.C. § 1367(c)(3).

We review de novo the district court's grant of a motion to dismiss for failure to state a claim. *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 648 (7th Cir. 2017). Marmarchi principally argues in this court that the district judge wrongly dismissed his claim that the defendants violated the First Amendment by removing him from his doctoral program in retaliation for complaining about fraud.

Two problems doom this free-speech claim. First, in raising it now, Marmarchi has departed from the legal theories that he presented in the district court. There Marmarchi focused on how Kirlik allegedly suppressed Marmarchi's speech by undermining his research and findings. But on appeal he has shifted to a new legal theory: the University retaliated against him by dismissing him for planning to make a "whistleblower complaint" about "fraud" by the "faculties." Legal theories that were not presented to the district court are forfeited on appeal. *United States v. Ritz*, 721 F.3d 825, 827 (7th Cir. 2013); *Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 546 (7th Cir. 1994). Otherwise, "to reverse the district court on grounds not presented to it would undermine the [district court's] essential function." *Economy Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720 (7th Cir. 2008) (quoting *Boyers v. Texaco Ref. & Mktg., Inc.*, 848 F.2d 809, 812 (7th Cir. 1988) (quotation marks omitted)).

Forfeiture aside, we see another problem: his allegations on appeal do not state a claim for retaliation under the First Amendment. We will assume that a university cannot expel a student because of a student's protected speech. *Compare Brown v. Li*,

308 F.3d 939, 947 (9th Cir. 2002) (graduate student's dishonest curricular speech is unprotected), *with Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667, 670 (1973) (college student's political cartoon in school newspaper is protected). The problem for Marmarchi is that he has not pleaded sufficient information about the speech that he made to University officials before they removed him.

Marmarchi focuses on his talk with the dean in October 2015. He alleges that he reported that he would make a "whistleblower complaint" about "fraud" by faculty members, including Kirlik. But a complaint alleging that the plaintiff suffered adverse action after reporting unspecified "unlawful" conduct does not state a claim of retaliation. *See EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781 (7th Cir. 2007). We explained why in *Kyle v. Morton High School*, 144 F.3d 448, 454 (7th Cir. 1998). In that case, we ruled that a public school teacher did not state a First Amendment claim for retaliation when he alleged only that he was fired for his "political . . . advocacy." *Id.* We reasoned that without any elaboration, the speech that the plaintiff *thought* was protected might not be, and because the possibility that it is unprotected cannot be tested, the complaint should be dismissed. *Id.* at 455. A related problem is that such an allegation does not provide defendants with "fair notice of the claim." *Concentra*, 496 F.3d at 780, 782 ("An allegation of retaliation for some unspecified act does not [sufficiently] narrow the realm of possibility . . . ."). Because Marmarchi never specifies what (if anything) he told the dean about Kirlik's alleged wrongdoing, one cannot assess whether his report to her is protected.

Marmarchi offers two responses but neither is availing. First, he asserts that he had conversations with two officers from the Offices of Ethics and Equity. But again he does not say what he discussed in those meetings. Second, he contends that he elaborated on his accusation against Kirlik in his formal grievance. But Marmarchi filed this grievance *after* the department chair notified him of his removal from the program, so the grievance did not cause the dismissal. *See Kyle*, 144 F.3d at 454.

That brings us to Marmarchi's claim that his dismissal occurred without due process, but this claim too cannot go forward. Such a claim depends on a contract between Marmarchi and the University. *Charleston v. Bd. of Trs. of Univ. of Ill. at Chicago*, 741 F.3d 769, 773 (7th Cir. 2013). But Marmarchi has not alleged any contract terms that the University violated, thus dooming this claim. *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("A plaintiff may not escape dismissal on a contract claim . . . by stating that he had a contract with the defendant . . . . What was the contract?"). Instead Marmarchi argued in the district court that according to the

University's handbook, a dean could have asked a panel of academics to hear his grievance but chose not to. But this argument is insufficient because this procedure was discretionary, not a promised entitlement. *See id.*

Marmarchi's remaining claims go nowhere on appeal. First, he has not developed any argument about employment discrimination or violations of the Family Medical Leave Act, saying on appeal that the "overarching issue in my case is neither employment nor discrimination." Second, we review for abuse of discretion the judge's decision not to exercise supplemental jurisdiction over the state-law claims. The "usual practice in this circuit" is for district courts to dismiss state-law claims when all federal causes of actions have been dismissed. *Hagan v. Quinn*, 867 F.3d 816, 829–30 (7th Cir. 2017). Marmarchi offers no reason to depart from that normal course.

Finally, Marmarchi contends that the judge should not have denied his motions requesting counsel, but we do not agree. We review a decision not to recruit counsel for abuse of discretion. *See Greeno v. Daley*, 414 F.3d 645, 658 (7th Cir. 2005). In reviewing the decision, this court examines (1) the plaintiff's attempts to obtain counsel; (2) his ability to litigate on his own given the complexity of the case; and (3) if the plaintiff is not able, whether counsel would have made a difference in the outcome. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). The judge reasoned that Marmarchi failed the first two prongs because he did not adequately explain his attempts to hire attorneys and he showed sufficient intellectual capacity to litigate. These conclusions were reasonable given that he did not attach any letters from law firms declining to represent him and he articulated many theories of relief. In the end his case faltered not because he made the wrong legal arguments but rather because he failed to describe adequately the events about which only he would know the details.

We thus AFFIRM the judgment of the district court.